# In the United States Court of Federal Claims

No. 16–1036C

(Filed: June 21, 2018)

```
*************************************
                                      *
JOHNATHAN D. SILVA,                   *
                                      *
                                      *
             Plaintiff,               *   Equal Access to Justice Act ; 28 U.S.C. §
                                      *   2412(d); Attorney's Fees; Prevailing
v.                                    *   Party on Remand; Substantially Justified;
                                      *   Judicial Imprimatur.
THE UNITED STATES,                    *
                                      *
             Defendant.               *
                                      *
*************************************
```

*John A. Wickham*, Law Office of John Adams Wickham, Evergreen, Colorado, for Plaintiff.

*Delisa M. Sanchez*, with whom were *Chad A. Readler*, Acting Assistant Attorney General, *Robert E. Kirschman*, Jr., Director, *Douglas K. Mickle*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., as well as *LCDR Adam B. Yost*, Office of the Judge Advocate General, U.S. Navy, for Defendant.

OPINION AND ORDER

WHEELER, Judge.

On December 28, 2017, counsel for Plaintiff Johnathan D. Silva filed a motion for attorney's fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d), for fees and expenses incurred in proceedings regarding his discharge from the United States Navy. The prevailing party in an EAJA action is entitled to reasonable attorney's fees. 28 U.S.C. § 2412(d)(1)(A), (B). In this case, both parties agreed to remand the case to the Board for Correction of Naval Records ("BCNR") where Mr. Silva was ultimately afforded all the relief he sought. Mr. Silva then voluntarily dismissed the case, but the parties are unable to agree on whether Mr. Silva is entitled to an award of attorney's fees.

Mr. Silva requests attorney's fees in the amount of $33,937.56. For the reasons set forth below, Mr. Silva's motion for attorney's fees is DENIED.

Factual and Procedural Background

On March 10, 2004, Mr. Silva enlisted in the United States Naval Reserve under the Delayed Entry/Enlistment Program ("DEP"). Compl. ¶ 1. While Mr. Silva was in the DEP, he also enlisted in the Individual Ready Reserve. Id. at ¶ 5. Mr. Silva commenced active duty on September 29, 2004. Id. at ¶ 1.

Mr. Silva served without disciplinary incident until February 13, 2008, when he received nonjudicial punishment ("NJP") for three offenses: (1) driving under the influence on December 1, 2007; (2) a two-hour unauthorized absence on December 28, 2007; and (3) driving under the influence on December 28, 2007. Id. ¶ 12. Then, in March 2008, Mr. Silva completed substance abuse treatment and his performance recovered. Id. at ¶¶ 13–14. However, on August 13, 2010, Mr. Silva was suspected of being under the influence of alcohol and drunk on duty. Id. at ¶ 15; BCNR Review ¶ 4(e), Dkt. No. 24. Subsequently, he was medically evaluated for fitness for duty. Compl. ¶ 15. On August 26, 2010, Mr. Silva, with advice of counsel, refused NJP in order to contest the charges. Id. at ¶¶ 28–29. On August 27, 2010, the Navy provided notice of and initiated administrative discharge proceedings against him. Id. at ¶ 30.

Mr. Silva contested the charges in his rebuttal statement and requested an administrative board hearing, claiming he met the six-year threshold of active military service necessary to be granted such a hearing. Id. at ¶¶ 32–33. The Navy denied his request concluding he was one month short of the threshold because the Navy did not count Mr. Silva's time in the DEP as active military service. Id. at ¶ 34; BCNR Review ¶ 4(f). On October 5, 2010, Mr. Silva received a General Discharge (Under Honorable Conditions) for Misconduct (Serious Offense) from the Navy. Compl. ¶¶ 34, 37.

In 2011, Mr. Silva petitioned the Naval Discharge Review Board ("NDRB") for his discharge, alleging, among other things, that the denial of a hearing under the administrative board was improper conduct. Id. at ¶ 38. On November 7, 2012, the NDRB denied the petition. Id. at ¶ 39. The NDRB determined that Mr. Silva's time in the DEP was not creditable for purposes of pay and thus, not creditable for determining the eligibility to request an administrative board. Id. The NDRB also stated that Mr. Silva's time in the DEP constituted service in the "Inactive Standby Reserve," rather than the "Ready Reserve." Id. at ¶ 8.

In 2014, Mr. Silva petitioned the BCNR to correct his naval record by setting aside his NJP and upgrading his discharge. Compl. ¶ 40; Notice, Attach. 1, Oct. 18, 2016, Dkt. No. 5. On June 22, 2015, the BCNR denied his application finding that the evidence was

"insufficient to establish the existence of probable material error or injustice." Notice, Attach. 1.

On August 22, 2016, Mr. Silva filed a complaint in this Court requesting that the Court review the BCNR decision and declare it "arbitrary and capricious, and abuse of discretion, and contrary to law." Compl. at 21. Mr. Silva further asked that: (1) the Court void his discharge for misconduct and retroactively restore him to active duty with back pay; (2) the Government issue Mr. Silva an Honorable discharge; and (3) the Government expunge all records related to the 2010 separation proceedings and discharge. Id.

On November 3, 2016, the parties voluntarily filed a joint motion to remand the case to the BCNR. Joint Mot. to Remand, Dkt. No. 8. The purpose of the remand was to seek guidance from the BCNR regarding the policy behind the NDRB's finding that Mr. Silva's time in the DEP was not considered creditable towards the six year threshold, as well as regarding his DEP time constituting service under the Inactive Standby Reserve, as opposed to the Ready Reserve. Joint Mot. to Remand at 3–4. The Court granted the motion to remand. Order Granting Mot. to Remand, Dkt. No. 9.

On April 28, 2017, the Government filed a motion to stay the case for an additional six months to allow the Navy and BCNR to finish reviewing the matter. Def.'s Mot. to Continue Stay, Dkt. No. 15. The Court granted the motion to stay but advised the Government that another extension was unlikely to be granted and that the stay would end on November 8, 2017. Order, Dkt. No. 16.

On November 8, 2017, the BCNR issued its remand decision, favoring Mr. Silva and satisfying all of his initial criteria in the complaint before the Court. BCNR Review at 4. As both parties concede, the Navy leadership reversed its policy and credited service time spent in the DEP toward the minimum six year requirement. Pl.'s Mot. at 7, Dkt. No. 26; Def.'s Resp. at 13, Dkt. No. 32. The Navy's Assistant General Counsel for Manpower & Reserve Affairs issued an advisory opinion stating that "the period served in [the DEP] counts towards fulfillment of the MSO." Pl.'s Mot., Attach. C, at 1–2 (quoting DoDI 1304.25, Encl. 3, ¶ 4, Oct. 31, 2013). Additionally, the advisory opinion stated that time spent in the DEP was considered time in the Individual Ready Reserve, not the Inactive Standby Reserve. Id. at 2. Content with the BCNR decision after remand, Mr. Silva filed for voluntary dismissal on November, 30, 2017. Notice of Voluntary Dismissal, Dkt. No. 25.

On December 28, 2017, counsel for Mr. Silva filed a motion for attorney's fees under the Equal Access to Justice Act. Pl.'s Mot. at 1. In his motion, counsel for Mr. Silva originally asked for attorney's fees in the amount of $26,184.04. Id. This amount was based on billing records of 126 hours at an hourly rate adjusted for cost-of-living expenses and inflation to $204.04, and an added expense of $475. Id. at 18–19.

The Government disagrees with Mr. Silva's entitlement to attorney's fees under EAJA, claiming he is not a prevailing party and that the Government's position was substantially justified. Def.'s Resp. at 1. Alternatively, if the Court finds that an EAJA award is appropriate, the Government asserts that Mr. Silva is not entitled to attorney's fees higher than the statutory cap, after taking cost of living adjustments into account, and only for work performed by his counsel before this Court. Id. Mr. Silva opposes the Government's position and, in his reply, amends his request for attorney's fees in the amount of $33,937.56 to account for the hours spent on the reply. Pl.'s Reply at 9, Dkt. No. 41. The new attorney's fee award figure is based on a total of 164 attorney hours billed at an hourly rate of $204.04, with an additional expense of $475. Id.

Discussion

I. Recovery Under EAJA

EAJA is a partial waiver of sovereign immunity because it renders the United States liable for attorney's fees for which it would otherwise not be liable. Ardestanti v. Immigration & Naturalization Serv., 502 U.S. 129, 137 (1991). As with any waiver of sovereign immunity, EAJA must be "strictly construed in favor of the United States." Id. Under EAJA, an award of reasonable attorney's fees is granted to the prevailing party in an action by or against the United States, provided that certain criteria are met. 28 U.S.C. § 2412(d)(1)(A). For a party to be eligible for attorney's fees from the United States, five criteria must be satisfied:

> (1) the party must have been a "prevailing party" in a suit against the United States; (2) the government's position must not have been "substantially justified;" (3) there cannot be any "special circumstances [that] make an award unjust;" (4) any fee application must be submitted to the court within thirty days of final judgment in the action and must also be supported by an itemized statement; and (5) a qualifying party must, if a corporation or other organization, have not had more than $7,000,000 in net worth and 500 employees at the time the adversarial adjudication was initiated.

28 U.S.C. § 2412(d)(1), (2); see Dalles Irrigation Dist. v. United States, 91 Fed. Cl. 689, 696 (2010); Comm'r, Immigration & Naturalization Service v. Jean, 496 U.S. 154, 158 (1990).

"The EAJA applicant has the burden of establishing that he is a prevailing party." Hughett v. United States, 110 Fed. Cl. 680, 685 (2013) (quoting Davis v. Nicholson, 475 F.3d 1360, 1366 (Fed. Cir. 2007)). Once established, the Government then bears the burden of proving that its position was substantially justified. Doty v. United States, 71 F.3d 384, 385 (Fed. Cir. 1995).

Here, the parties disagree about whether Mr. Silva is a prevailing party and whether the Government's position was substantially justified. The Court considers the standards for decision and review appropriate for both of these subsections below.

### A. Prevailing Party

For a party to prevail, there must be some relief on the merits of the claim in order to create a "material alteration of the [parties'] legal relationship." Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 603–04 (2001). Further, the material alteration of the legal relationship of the parties must be achieved through the "necessary judicial *imprimatur* on the change." Id. at 605. Two examples of an alteration in the legal relationship between the parties include an enforceable judgment on the merits and a court-ordered consent decree. Hughett, 110 Fed. Cl. at 686 (citing Buckhannon, 532 U.S. at 601, 603, 605–06).

When a case is remanded to an administrative agency, the remand may confer prevailing party status, but not every remand "constitutes a grant of relief on the merits." Former Emp.'s of Motorola Ceramic Prod.'s v. United States, 336 F.3d 1360, 1366 (2003). When the remand is required because of alleged agency error, the EAJA applicant qualifies as a prevailing party. Id. However, the EAJA applicant does not receive prevailing party status "if the court issuing the remand order does not identify or acknowledge an error by the administrative agency." Small v. United States, 130 Fed. Cl. 88, 103 (2016) (quoting Hughett, 110 Fed. Cl. at 687). "Whether or not a remand was based on an agency error is not limited to the four corners of the remand order." Gurley v. Peake, M.D., 528 F.3d 1322, 1328 (Fed. Cir. 2008). Thus, when a remand order does not expressly state that it was based on administrative error, the EAJA applicant has the burden to prove, based on the evidentiary record, that the remand was "predicated on administrative error even though the remand order does not say so." Davis v. Nicholson, 475 F.3d 1360, 1366 (Fed. Cir. 2007).

A voluntary dismissal after remand does not automatically preclude a finding of prevailing party status for the plaintiff. Martinez v. United States, 94 Fed. Cl. 176, 183 (2016). As long as there has been "some preceding judicial action which constitutes a judicial *imprimatur* on a material alteration of the legal relationship of the parties," the plaintiff may still prevail. Id. (quoting Buckhannon, 532 U.S. at 605).

In order to recover attorney's fees under EAJA, Mr. Silva must establish that he is a prevailing party. More specifically, because the case was remanded to the BCNR, Mr. Silva must prove that the remand was due to administrative error. See Nicholson, 475 F.3d 1366. Mr. Silva makes three arguments in support of being a prevailing party. He argues that the Court's remand order: (1) was based on agency error, (2) "sufficiently changed the relationship between the parties," and (3) constituted judicial relief. Pl.'s Mot. at 12–14.

5

1. <u>Agency Error</u>

In this case, the Court did not identify or acknowledge an error by the agency in the remand order. Remand Order ("The Court agrees that remand to the BCNR is appropriate and would promote the most efficient resolution of this case.") In order to establish prevailing party status, Mr. Silva must show that the remand was predicated on an administrative error through the evidentiary record. <u>Nicholson</u>, 475 F.3d at 1366. Mr. Silva argues that the remand, based on the entirety of the record, is predicated upon agency error because the BCNR decision was arbitrary by violating its mandate under 10 U.S.C. § 1552. Pl.'s Mot. at 13. He claims that the BCNR failed to "determine or ignored the true nature of the issue, or if the BCNR did evaluate the issue, it failed to provide a sufficiently detailed and reasoned decision." <u>Id.</u> Ultimately, he contends, the remand order was based upon fixing the "virtually useless" BCNR decision on judicial review. <u>Id.</u>

The Government argues that the joint remand was not premised upon agency error because the NDRB and BCNR decisions were based on present policy at the time of their respective decisions, which changed during the pendency of the BCNR remand. Def.'s Resp. at 13–14. The Government points out that Mr. Silva conceded that he was aware of the change in Navy policy between the issuance of the NDRB and BCNR first decision and the second BCNR decision after remand. Def.'s Resp. at 13; Pl.'s Mot. at 7 ("[T]he Navy leadership reversed its policy to now credit a Navy member's uninterrupted service in the DEP towards the minimum six years service required for entitlement to an administrative separation board.") The Government states further that "on remand, the BCNR did not 'correct' any errors in Mr. Silva's military record. Rather, it applied the Navy's newly revised policy…." Def.'s Resp. at 14.

Additionally, with regard to the NDRB's mistaken mention that Mr. Silva had been enlisted in the Inactive Standby Reserve, instead of the Individual Ready Reserve, the Government asserts that the incorrect statement had no bearing on whether Mr. Silva's time in the DEP should have been credited to the threshold six years. <u>Id.</u> at 15. Rather, "[t]he NDRB made its decision based on the fact that the Navy's policy—at the time it considered Mr. Silva's petition—was that time [spent] in DEP was not creditable… not based on whether a service member was in the Inactive Standby Reserve or in the Individual Ready Reserve." <u>Id.</u> (citing Notice, Attach. 1, 26). Although the Government made a mistake, it had no impact on the merits of the case and does not rise to the level of an administrative error.

"[R]emands that do not address administrative error but which merely provide another opportunity for adjudication are insufficient to convey prevailing party status on a plaintiff." <u>Hughett</u>, 110 Fed. Cl. at 68 (finding that a former service-member was not a prevailing party under EAJA after a remand not based on administrative error and a voluntary dismissal occurred). In this case, the remand does not address administrative error explicitly or implicitly. The remand to the BCNR, therefore, did not convey

prevailing party status on Mr. Silva. Without such status, Mr. Silva may not be granted attorney's fees under EAJA. Accordingly, the motion for attorney's fees must be denied.

### 2. Altered Legal Relationship and Judicial *Imprimatur*

Mr. Silva also argues that the remand order altered the legal relationship between the parties because it instructed the BCNR to reconsider Mr. Silva's claim and to clarify prior inconsistencies, specifically the NDRB's conclusion that Mr. Silva was enlisted into the Standby Reserve even though his enlistment document reflected otherwise. Pl.'s Mot. at 12. In order to prevail, a party must show that the material alteration of a legal relationship between parties was achieved through the "necessary judicial *imprimatur* on the change." Buckhannon, 532 U.S. at 605. "A party must have received a judicial *imprimatur* tantamount to a judgment in favor of that party on the merits of the original claim." Akers v. Nicholson, 409 F.3d 1356, 1359 (Fed. Cir. 2005) (citing Buckhannon, 532 U.S. at 605). Additionally, the Supreme Court rejects the "catalyst theory" holding that a plaintiff lacks the necessary judicial *imprimatur*, and does not prevail "if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." Buckhannon, 532 U.S. at 601, 605.

Mr. Silva contends that judicial *imprimatur* is provided in the remand because the BCNR was not free to ignore the Court's instructions to determine whether Mr. Silva's time in the DEP is creditable to his total military service time. Pl.'s Mot. at 12–13. Additionally, Mr. Silva states that the Court's November 8, 2017 deadline changed the Government's otherwise voluntary request for remand into a judicially-imposed legal relationship between the parties. Id. at 14.

The Court's remand is not the necessary judicial *imprimatur* to alter the legal relationship between the parties. Mr. Silva and the Government voluntarily filed a joint motion to remand the case to the BCNR to receive guidance regarding whether Mr. Silva's time in the DEP should be considered creditable to his active military service. Joint Mot. to Remand at 3–4. The instructions that the Court issued with the remand order were only a duplicate of the instructions that the parties already laid out in their joint motion to remand. Id. at 4; see also Order Granting Mot. to Remand. Since judicial *imprimatur* was not achieved through the Court's instructions, there is not an altered legal relationship between the parties.

Mr. Silva also contends that the remand order constitutes judicial relief because had the case not been remanded, "the remedy would have included a remand anyway." Pl.'s Mot. at 14. However, as previously noted, the Supreme Court has held that although achieving the desired result, the plaintiff still lacks the necessary judicial *imprimatur* if the lawsuit brought about a voluntary change in the defendant's conduct. Buckhannon, 532 U.S. at 601, 605. The joint motion to remand was a voluntary change in this case; therefore, judicial *imprimatur* was absent.

Mr. Silva did not achieve prevailing party status because there was no material alteration of the parties' legal relationship.  As such, Mr. Silva may not be granted attorney's fees under EAJA.

B. Substantially Justified

Although the Court has found that Mr. Silva does not secure prevailing party status under EAJA, the Court will still address whether the Government's position was substantially justified.  The term "substantially justified" means that the Government's position need not be correct or "justified to a high degree" but only "justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person." Pierce v. Underwood, 487 U.S. 552, 565 (1988) (internal quotations omitted).  The Government bears the burden of proof when raising the defense that it was substantially justified. Doty, 71 F.3d at 385.  In assessing whether the Government's position was substantially justified, "the entirety of the conduct of the government is to be viewed, including the action or inaction by the agency prior to litigation." Chiu v. United States, 948 F.2d 711, 715 (Fed. Cir. 1991).

The Government posits three arguments in support of its proposition that its position was substantially justified.  First, the Government points out that its pre-litigation conduct was reasonable because Mr. Silva's petition in the first instance was untimely.  Def.'s Mot. at 20.  Second, the Government contends its pre-litigation actions were in accordance with the regulations and policies in effect at the time that the NDRB and BCNR denied Mr. Silva's petition. Id. at 21–22.  Finally, the Government argues that its position in litigation was also substantially justified because the Government has responded to Mr. Silva's claims in a "reasonable and legally justifiable manner." Id. at 22.

The Government points out that Mr. Silva's petition to the BCNR was untimely and could have been denied on that basis alone.  Notice, Attach. 1, 2 ("Although your application was not filed in a timely manner, the Board found it in the interest of justice to waive the statute of limitations and consider your application on the merits.")  Additionally, Mr. Silva's petition was denied because of prevailing policies at the time it was submitted, which Mr. Silva acknowledged in his motion.  Pl.'s Mot. at 7.  Mr. Silva's contention, that the BCNR decision on June 22, 2015 provides no evidence to justify its decision in denying Mr. Silva the right to a separation board, therefore, is irrelevant.

All the actions taken by the Government prior to litigation were taken in accordance with the regulations and policies in effect at the time. Therefore, Mr. Silva's argument that the Government's inconsequential mistake is evidence that its position is not substantially justified and his assertion that the Navy's DEP policy was settled law are without merit. The BCNR and NDRB denied Mr. Silva's petition because of the implemented policy at the time those decisions were made, which, again, Mr. Silva acknowledges. Id. at 7; see also Def.'s Resp. at 20–21.

During litigation, the Government acted in a reasonable and legally justifiable manner. Mr. Silva acknowledges the Government's reasonableness during litigation in his motion: "[G]overnment counsel's position during litigation has been reasonable for diligent efforts to create a process for resolving the plaintiff's claims." Pl.'s Mot. at 17, n.5.

Mr. Silva did not establish that he is a prevailing party, and the Government has met its burden to show that its conduct was substantially justified. Mr. Silva, therefore, may not recover attorney's fees under EAJA.

## Conclusion

For the foregoing reasons, Plaintiff's motion for attorney's fees is DENIED. The Clerk is directed to enter final judgment in favor of Defendant. No costs.

IT IS SO ORDERED.

s/ Thomas C. Wheeler
THOMAS C. WHEELER
Judge